IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OSCAR WAYNE MILLER, : CIVIL ACTION NO.
: 1:15-CV-0079-CC-JSA
    Plaintiff, :
:
    v. :
:
PATRICK R. DONAHOE, *Postmaster* :
*General, United States Postal Service*, : **NON-FINAL REPORT AND**
: **RECOMMENDATION ON TWO**
    Defendant. : **MOTIONS TO DISMISS**

    Plaintiff alleges various acts of illegal discrimination by his employer on the basis of race, age, and disability, as well as retaliation for having made complaints about discrimination. Plaintiff filed a Complaint [1] on January 26, 2015, to which Defendant responded via Motion to Dismiss [7] on April 8, 2015. Plaintiff in response filed a pleading that purported to be an Amended Complaint, and which also was entitled "Objection to Dismissal," [8] on May 8, 2015. Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint [9] on May 21, 2015. Plaintiff has not responded to the second Motion to Dismiss. For the reasons discussed below, the Court **RECOMMENDS** that Defendant's Motions to Dismiss [7] [9] be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

In the original Complaint [4], Plaintiff included claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of race (Black) and gender (Male); under the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, and/or Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, *et seq.*, for employment discrimination on the basis of disability; and under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*, for employment discrimination on the basis of being older than age 40. *See* Complaint [4] at 1, 6. Plaintiff also included a claim for "retaliation," i.e., "my opposition to a practice of my employer that I believe violated the federal anti-discrimination laws or my participation in an EEOC investigation." *Id.*

Plaintiff attached his EEO complaint, in which he summarized his claims as follows:

> USPS [United States Postal Service] area management has lied about my: reporting time, duty assignment, discipline, workmans compensation claim and my employment status. I was charged with AWOL but Deborah Willis on August 25, 2011, Karen Boston on August 26, 2011 nor Cornelius Johnson on August 27, 2011 were. Since I am a black male over 50 who requires reasonable accommodations due to everyday joint stiffness I am at the forefront of management's pretextual actions.

*Id.* at 7.

In the Complaint, Plaintiff also attached a decision from the EEOC appeals staff affirming an administrative law judge's finding that Plaintiff failed to substantiate any claim. *Id.* at 10. This decision summarized the adverse actions that Plaintiff alleges he suffered as the result of discrimination and/or retaliation as follows:

(1)   on July 6, 2011, the Agency [i.e., USPS] changed his start time from 4:00 a.m. to 4:30 a.m.;
(2)   on July 11, 2011, the Agency charged him with six hours of Absence without Leave (AWOL);
(3)   on August 3, 2011, the Agency issued him a Letter of Warning (LOW);
(4)   the Agency allegedly lied about a workers' compensation claim that he purportedly filed; and
(5)   on August 27, 2011, the Agency reassigned him from the position of Part-time Flexible (PTF) to Non-Traditional Full-Time (NTFT) clerk.

Complaint [4] at 11.

Defendant filed a Motion to Dismiss [7], arguing among other things that the Complaint failed to allege facts demonstrating a plausible discrimination or retaliation claim, and specifically that the various actions summarized above did not as a matter of law constitute cognizable adverse employment actions. Plaintiff thereafter filed an Amended Complaint [8].[1]

---

[1] Plaintiff was entitled to amend his Complaint as of course under FED. R. CIV. P. 15(a)(1)(B), within twenty-one days after receiving service of the Motion to Dismiss. Including the obligatory three days for service, Plaintiff was charged with

In the Amended Complaint, Plaintiff referred again, although quite generally, to the change in his schedule, the change in his "Part Time" position, and the "delay" in his workers' compensation submission. He provided the most detail with regard to the assessment of his AWOL status. The key allegations, as far as the Court can discern, are as follows:

Plaintiff is the American Postal Worker Union's steward for six particular USPS facilities located in central Atlanta. Am. Compl. [8] ¶ 2. Plaintiff alleges that USPS "occasionally fail[s] to open up their facilities on time." *Id.* ¶ 1. Plaintiff at some point filed an "EEO Complaint" that "addressed the Issue of how long do craft workers (who are all members of his protected class) supposed to wait for entry

---

receiving the Motion to Dismiss on April 11, 2015, which means the twenty-one day deadline was May 2, 2015. He filed the Amended Complaint six days later, on May 8, 2015. Defendant argues that the Court should not accept this pleading, as it is untimely.

In the circumstances, however, the Court will excuse the minimal violation. Defendant demonstrates no prejudice from having received the Amended Complaint a few days late. The Court also notes that it has given scheduling leeway to Defendant in this case. On March 23, 2015, counsel for Defendant filed a motion seeking to extend its time to answer or respond, which was due on March 30 [5], which Plaintiff never opposed, and the Court granted. While this motion was filed prior to the deadline, Defendant filed it without either allowing sufficient time for a response prior to the deadline or inquiring about whether Plaintiff would consent to the relief sought. In all of these circumstances, and considering that leave to amend under FED. R. CIV. P. (a)(2) should be "freely" given when justice so requires, the Court accepts the Amended Complaint.

before article 8 hours of work guarantees becomes applicable." *Id.* ¶ 5. On May 23, 2011, USPS eliminated the part-time, regular position that Plaintiff had apparently been designated as, and thereafter he was "automatically" made "an unassigned clerk who would be placed in a residue clerk vacancy at Central City Carrier Station at that time the only residual position available were 40 hours a week with two off days." *Id.* ¶ 6.

On July 5, 2011, Plaintiff "inquired about this workers compensation claim the agency had 10 days to compute their portion of this claim." *Id.* ¶ 7. Plaintiff later alleged that, around the same time, another co-worker's claim was handled in a timely manner, apparently in contrast to how Plaintiff's claim was handled. *Id.* ¶ 10.

On July 6, 2011, a "station supervisor" changed Plaintiff's reporting time "without any consultation with the union and against the seniority roster." *Id.* ¶ 8. Plaintiff alleges that this change in his reporting time "was reprisal of past EEO activity case No. 4H-300-01331," in which Plaintiff claims he had "alleged retaliation for seeking remedies for unlawful work place discrimination . . . ." *Id.* ¶ 9.

On July 11, 2011, the station manager charged Plaintiff with six hours absent without leave. *Id.* ¶ 11. "Managers are taught to intimidate, harass and discourage their employees of color from demanding their hours of work guarantees." *Id.* The Court infers that Plaintiff is alleging that his absence was the result of the facility

opening late, i.e., that he was present on time but the facility was not open. Plaintiff alleges that the "past practices, when there were Caucasian workers at these facilities, were to pay eight hours pay to those who report on time and could not gain entry to the facility." *Id*. In any event, Plaintiff alleges that this AWOL status was "soon changed," that he was deemed to have taken 8 hours leave without pay, and was paid for the inconvenience of wait time. *Id.* ¶ 12. Plaintiff alleges that another employee, Karen Boston, was paid for taking 8 hours of annual leave "each time she left because the facility fail to open on time." *Id.* Plaintiff, however, "would not agree to use his annual leave to cover up their failure to report to work on time." *Id.* Thus, on November 27, and December 28, 2010, the manager docked Plaintiff's pay, and Plaintiff thereafter filed an "EEO complaint of discrimination."[2] *Id.* ¶ 12.

On August 27, 2011, "someone –(USPS will not tell the union who is responsible) assigned plaintiff from a part-time, regular position to a non-traditional full time clerk position at Central City Carrier Facility." *Id.* ¶ 14. As noted above, however, Plaintiff also alleges that the part-time, regular position was "eliminated" altogether by the agency, and that Plaintiff was thereafter "automatically" reassigned

---

[2] It is not clear whether this "EEO complaint" is separate from the one previously referenced in Paragraph 9.

to a "residue clerk vacancy" at Central City Carrier Facility, and that the only residual

position available was for 40 hours per week with two off days. *Id.* ¶ 6.

## II.     DISCUSSION

### A.      *Standards On A Motion To Dismiss*

Defendant has moved to dismiss all of Plaintiff's claims under Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failure to state a claim for relief. *See* FED.

R. CIV. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the

Court cannot consider matters outside of the pleadings, and must accept the

allegations of the non-movant's pleadings as true, but "[t]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations

omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations

in a complaint as true, it need not accept as true legal conclusions recited in a

complaint. Repeating that "only a complaint that states a plausible claim for relief

survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106); *see also* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice"). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a

plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002).[3]

B.    *Americans with Disabilities Act Claims*

As to Plaintiff's claims under the Americans with Disabilities Act ("ADA"), Defendant argues, and Plaintiff does not dispute, that the Amended Complaint fails to state a claim as a matter of law. Specifically, the ADA does not apply to the United States or its agencies, including Defendant. *See* 42 U.S.C. § 12111(5)(B)(i); *Webster v. Henderson*, 32 F. App'x 36 (4th Cir. 2002). Defendant's argument is correct (and not disputed). Thus, the Court **RECOMMENDS** that any claims under the ADA be **DISMISSED**.[4]

---

[3] In assessing the sufficiency of the allegations, the Court looks to the Amended Complaint [8], as an Amended Complaint completely supersedes the original and becomes the operative pleading. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007). However, the Court has looked to Plaintiff's original Complaint for purposes of clarifying or better understanding what Plaintiff alleges in his Amended Complaint.

[4] Plaintiff can still pursue claims against the United States and its agencies for employment-related disability discrimination and retaliation, but under the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, not the ADA. Plaintiff here purports to bring Rehabilitation Act claims, which claims are not included in the above dismissal recommendation.

C.    *All Other Claims*

Title VII prohibits employers from discharging or otherwise discriminating against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To successfully assert a Title VII claim, the plaintiff must allege facts that are "sufficient to create an inference of discrimination." *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997)) (quotation marks omitted). A plaintiff may create an inference of discrimination by alleging the following elements of a prima facie case under Title VII: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than one or more similarly situated individuals outside his protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). The other employment statutes under which Plaintiff purports to bring claims all similarly require him to show that he was subjected to an adverse employment action. Defendant's Motion to Dismiss focuses principally on the argument that the facts alleged in the Amended Complaint fail to establish an adverse employment action as a matter of law.

In a discrimination case, for an employment action to be considered an "adverse action" that triggers liability, the decision must cause a material alteration

on the terms of employment. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) ("Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way") (quoting 42 U.S.C. § 2000e-2(a)). In general, courts have recognized that managers require broad discretion to distribute duties as they see fit, and absent extreme circumstances, should not be forced to justify each assignment of job duties or responsibilities in front of a jury. *See, e.g., Shannon v. BellSouth Telecomms.*, 292 F.3d 712, 714-15 (11th Cir. 2002) (reassignment to position in which it was more difficult to meet performance criteria was not adverse employment action); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000) (allegation that professor was denied desired teaching assignments was not adverse employment action, absent evidence that she was somehow entitled to those courses or that other professors were allowed to pick their assigned classes). Thus, the law in the Eleventh Circuit is that "[a] tangible employment action constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits." *Davis*, 245 F.3d at 1239 (emphasis in original).

The standard in a retaliation case is somewhat more inclusive. A plaintiff is required to "show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotation omitted). Further, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Nevertheless, the allegedly retaliatory acts must be material and significant and not trivial. *Id.* at 68.

In the original Complaint, Plaintiff described the adverse actions he has suffered as follows:

> USPS area management has lied about my: reporting time, duty assignment, discipline, workmans compensation claim and my employment status. I was charged with AWOL but Deborah Willis on August 25, 2011, Karen Boston on August 26, 2011 nor Cornelius Johnson on August 27, 2011 were. Since I am a black male over 50 who requires reasonable accommodations due to everyday joint stiffness I am at the forefront of management's pretextual actions.

Complaint [4] at 7. In a document that Plaintiff attaches to the Complaint, the EEOC

summarized its understanding of the adverse actions allegedly suffered by Plaintiff as follows:

> (1)    on July 6, 2011, the Agency [i.e., USPS] changed his start time from 4:00 a.m. to 4:30 a.m.;
>
> (2)    on July 11, 2011, the Agency charged him with six hours of Absence without Leave (AWOL);
>
> (3)    on August 3, 2011, the Agency issued him a Letter of Warning (LOW);
>
> (4)    the Agency allegedly lied about a workers' compensation claim that he purportedly filed; and
>
> (5)    on August 27, 2011, the Agency reassigned him from the position of Part-time Flexible (PTF) to Non-Traditional Full-Time (NTFT) clerk.

*Id.* at 11. As described in the factual background, above, the Amended Complaint refers at least generally to each of these issues, although it appears to focus on the AWOL issue.

At the threshold, the Court notes that Plaintiff's Complaint and Amended Complaint are difficult to understand, and as to many of the harms alleged by Plaintiff, the Court has struggled to identify *facts* suggesting that they were based on race, gender, or age discrimination or retaliation. Nevertheless, Defendant's Motion to Dismiss [9] focuses specifically on the argument that, even assuming discriminatory or retaliatory intent, none of these harms listed above constituted a material adverse employment action as a matter of law. As explained below, the Court agrees with Defendant in most, but not all, respects.

13

First, a minor scheduling change from a 4:00 a.m. start time to 4:30 a.m. does not materially alter the terms and conditions of employment.[5] *See, e.g., Aldridge v. Potter*, No. 8:08-cv-2034-T-30EAJ, 2010 WL 1417642, at *4 (M.D. Fla. Apr. 8, 2010) (finding that change in mail carrier's start time from 7:00 a.m. to 7:30 a.m. did not constitute an adverse employment action); *Puckett v. Potter*, 342 F. Supp. 2d 1056, 1067-68 (M.D. Ala. 2004) (holding that one-hour scheduling change is not an adverse employment action as a matter of law).

Second, Plaintiff does not allege that his "letter of warning" resulted in any tangible impacts to his employment and, to the contrary, his allegations state that even this "warning" was reduced to a non-pejorative "official discussion." Am. Compl. [8] ¶ 13. These facts are insufficient to show a material adverse employment action for purposes of Title VII or other liability. *See Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 484 (11th Cir. 2011) (noting that a letter of warning that did not itself result in a tangible change in terms or conditions of employment, such as loss of pay or position or benefits, was not an adverse employment action); *Davis*, 245 F.3d at 1238-41 (placing a negative performance appraisal in an employee's file was not itself an adverse employment action, noting that a Title VII discrimination claim

---

[5] The Court also cannot discern any allegations that other employees outside of Plaintiff's protected class did not suffer a change in starting time.

"rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment.").

Third, as to the alleged untimely processing of workers' compensation forms, courts in this Circuit and elsewhere have found that such claims also do not constitute material adverse employment actions. *See, e.g., Johnston v. Henderson*, 144 F. Supp. 2d 1341, 1357-59 (S.D. Fla. 2001) (holding that improper denial of sick leave, unauthorized release of confidential medical records, issuance of unfounded notice to report questioning employee's leave of absence from duty, unspecified allegation of harassment, improper filing of insurance forms, improper alteration of workers' compensation records, institution of an unfounded collection action, and incorrect processing of FMLA forms did not constitute adverse employment actions); *McCullers v. Napolitano*, 427 F. App'x 190, 196 (3d Cir. May 12, 2011) (in a retaliation case, applying the *Burlington Northern* standard, finding that alleged delays in processing workers' compensation forms, placement on "AWOL" status, a refusal to process a travel payment voucher, a refusal to allow participation in training programs, and even a fourteen-day suspension, were not adverse employment actions that would have dissuaded a reasonable worker from engaging in protected EEO activity); *Eversole v. Spurlino Materials of Indianapolis, LLC*, 804 F. Supp. 2d

922, 932-33 (S.D. Ind. 2011) (granting summary judgment for employer because employer's untimely completion of workers' compensation forms could not be seen as a material adverse action under Title VII) (gathering authority).[6]

Fourth, Plaintiff does not allege facts to show that the change in his job description from "Part Time Flexible" to "Non Traditional Full Time" adversely impacted his pay, benefits, or any other terms or conditions of employment. Moreover, his allegations if anything make clear that this change was not the result of discrimination. He alleges that his part-time, regular position was "eliminated" altogether by the agency, and that he was thereafter "automatically" reassigned to a "residue clerk vacancy" at Central City Carrier Facility, and that the only residual position available was for 40 hours per week with 2 off days. *See* Am. Compl. [8] ¶ 6.[7]

---

[6] Moreover, although Plaintiff alludes to the fact that Defendant timely processed forms for other employees, he does not allege that these other employees were members of any particular protected class outside of his own.

[7] That this change was the result of a generally applicable conversion of all postal employees in "Part Time Flexible" status to "Non-Traditional Full Time" status is corroborated by publicly available postal union publications that Defendant urges the Court to take judicial notice of. *See* Def. Motion [9-1] at 3 n.3. As Plaintiff does not respond at all, he specifically does not oppose Defendant's request for the Court to consider this information. Nevertheless, the Court finds it unnecessary to do so because Plaintiff's own factual allegations establish that this change was the result of a generally applicable policy change that was not targeted at him on the grounds of race, gender, age, or EEOC activity.

The more difficult issue involves the assessment of six hours of AWOL on July 11, 2011, apparently based on the fact that Plaintiff showed up on time to work but left because the facility was not open as it should have been. Ultimately, Plaintiff compromised and settled this issue in a union grievance process, such that the AWOL charge was withdrawn, Plaintiff was paid $75 for the time that he waited for the facility to open, and he was deemed to have been on leave-without-pay status for the remainder of the day. *See* Am. Compl. [8] at 9.[8]

As Defendant points out, numerous cases have found that being charged or placed on AWOL status does not constitute an adverse employment action for purposes of sustaining either a discrimination or retaliation claim, because such action does not otherwise impact the ongoing terms or conditions of employment in and of itself. *See* Def. Mot. [9-1] at 11 (gathering authority, including *Graham v. State Farm Mut.*, 193 F.3d 1274, 1283 (11th Cir. 1999) (finding, in the FMLA

---

[8] Defendant does not argue that the Complaint lacks allegations that the assessment of Plaintiff's AWOL status was the result of race-based, gender-based, or other discrimination. The Court notes that Plaintiff, although very generally, alleges that the "past practices, when there were Caucasian workers at these facilities, were to pay eight hours pay to those who report on time and could not gain entry to the facility." Am. Compl. [8] ¶ 11. In the absence of argument otherwise from Defendant, the Court assumes for purposes of this motion that these allegations sufficiently allege disparate treatment and discriminatory intent with regard to the assessment of AWOL and the docking of Plaintiff's pay.

context, that being charged with AWOL status for two days was not sufficiently material to constitute an adverse employment action)).

In the Court's view, however, the issue is not the assessment of AWOL status, which in any event was later withdrawn from Plaintiff's file. Rather, Plaintiff was forced to take leave-without-pay, when he was scheduled to work and allegedly arrived ready, willing, and able to do so. Essentially, in other words, his pay was docked for nearly an entire day. Defendant characterizes docking of pay as an "inconvenience," but many cases are not so dismissive. *See, e.g., Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 442 (6th Cir. 2008) (holding that waitress suffered material adverse employment action when she was sent home for part of a day, thereby potentially foregoing receipt of tips); *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 100 (2d Cir. 2002) (finding that docking an employee's pay is a direct economic harm and tangible employment action); *Franklin v. Potter*, 600 F. Supp. 2d 38, 72 (D.D.C. 2009) (noting that being sent home for one day on unpaid leave status is a material adverse action, specifically because of the loss of pay).

To be sure, the Amended Complaint does not allege that Plaintiff was affirmatively sent home from work. Rather, it appears that Plaintiff reported to work, but the facility was not open as it should have been, and after a period of waiting in a high-crime neighborhood, *see* Am. Compl. [8] ¶ 4, he left. Either way, Plaintiff

alleges that he was denied pay for what should have been a day's worth of work through no fault of his own. This may not prove to be the result of discrimination, but the Court cannot find at this juncture that the denial of pay was not an adverse employment action as a matter of law.

The Court is mindful that Plaintiff settled his union grievance relating to this incident and was paid $75 for his "waiting" time. But Defendant does not directly argue—much less cite any authority establishing—that this settlement of a union grievance legally released it from any subsequent Title VII lawsuit.[9] Rather, Defendant simply argues that its agreement to withdraw the pejorative AWOL charge and pay $75 in waiting time eliminates any adverse impact that may otherwise have existed. The Court cannot agree, at least without more information, where despite being paid $75, Plaintiff was otherwise docked eight hours' worth of pay on a day he was supposed to and was ready, willing, and able to work.

Thus, while the Court agrees with Defendant that most of the issues raised by Plaintiff are not cognizable under Title VII or the other statutes implicated by his

---

[9] Whether the union settlement legally released Defendant's liability in this case—and barred Plaintiff from subsequently suing under Title VII—is a more complicated issue that would have to be supported with more legal authority and, possibly, more facts. *See, e.g., White v. Michigan Dep't of Corr.*, 2010 WL 3720210, at *8 (W.D. Mich. Sept. 17, 2010).

Complaint, the Court disagrees with regard to the claim related to Plaintiff's assessment of leave without pay. That allegation is sufficient at this juncture to establish a materially adverse employment action. Thus, the Court **RECOMMENDS** that the Motion to Dismiss [9] be **DENIED** as to Plaintiff's non-ADA claims, although only insofar as those claims are premised on Plaintiff's having been forced to take leave without pay in the circumstances described above.

### III.   CONCLUSION

As explained above, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [9] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **RECOMMENDS** that all claims under the Americans with Disabilities Act be **DISMISSED**. The Court **RECOMMENDS** that all other claims be permitted to proceed, and that Defendant's Motion to Dismiss those claims be denied, but only to the limited extent described above.

The Court further **RECOMMENDS** that Defendant's earlier-filed Motion to Dismiss [7], which was directed at a Complaint that has been superseded and is no longer the operative pleading, be **DENIED** as Moot.

**IT IS SO ORDERED** this 3rd day of November, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE